IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRANDON MARTIN, #B-51077,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 11-cv-1048-GPM |
| | ) |
| **DONALD GATEZ,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff Brandon Martin, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a ten year sentence for aggravated arson. The initial matter the Court must address is Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 19).

**Motion for Leave to Proceed IFP**

Plaintiff seeks leave to proceed IFP in this case without prepayment of the Court's usual $350.00 filing fee in a civil case. *See* 28 U.S.C. § 1914(a). Pursuant to 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a suit without prepayment of fees upon presentation of an affidavit stating the prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). A prisoner filing a civil action must also submit "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at

which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).

In this case, Plaintiff has tendered an affidavit of indigence that is sufficient as to form and a certified copy of his prison trust fund account statement, but this is not the end of the matter. Under 28 U.S.C. § 1915:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Plaintiff acknowledged in his complaint that he has previously been assessed three "strikes" within the meaning of 28 U.S.C. § 1915(g) (Doc. 1, p. 3). The Court has consulted the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) to verify Plaintiff's strikes. *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). The electronic docket of the Northern District of Illinois discloses the following actions brought by Plaintiff, while a prisoner, seeking redress from officers or employees of a governmental entity that have been dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted: *Martin v. Bucklo*, No. 06-cv-3457 (N.D. Ill. dismissed Aug. 30, 2006) (failure to state claim and defendant immune); *Martin v. Guabla*, No. 06-cv-5346 (N.D. Ill. dismissed Oct. 6, 2006); and *Martin v. Office of Professional Standards et al*, No. 06-cv-3265 (N.D. Ill. dismissed Oct. 12, 2006). Since Plaintiff has been assessed three "strikes" under 28 U.S.C. § 1915(g), he may not proceed IFP in this case unless he is under imminent danger of serious physical injury.

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). The threat of physical attack by other inmates, which is perhaps the most obvious type of imminent danger a prisoner may face, is the threat Plaintiff asserts he is under in the instant action. Judge Easterbrook of the Seventh Circuit observed that the "imminent danger" provision:

> can serve its role as an escape hatch for genuine emergencies only if understood reasonably. If limited to situations in which, say, a beating is ongoing, no prisoner will find solace; once the beating starts, it is too late to avoid the physical injury; and once the beating is over the prisoner is no longer in "imminent danger" and so could not use this proviso to seek damages . . . . Reading the imminent-danger language this way would make it chimerical, a cruel joke on prisoners. The imminent-danger language must be read instead as having a role in those cases where time is pressing and the prisoner is unable to pursue . . . other options . . . . When a threat or prison condition is real and proximate, and when the potential consequence is "serious physical injury," then the courthouse doors are open even to those who have filed three frivolous suits and do not have a penny to their name.

*Lewis*, 279 F.3d at 530.

In this case, Plaintiff's allegations establish he could be under imminent danger of serious physical injury. Plaintiff contends he is a former Vice Lords gang member, and has now been targeted for a "hit" by inmates remaining in the gang. This is so, according to Plaintiff, because he shot and paralyzed a gang leader and because Plaintiff is known to be homosexual (Doc. 1-1, p. 1). Plaintiff has been attacked three times (Doc. 1, p.3); thus the threat is more than speculative. The most recent attack occurred in October 2011 when an inmate struck Plaintiff in the face and his leg was cut (Doc. 1, p. 3). The attack occurred despite Plaintiff's numerous reports to prison staff including names of individuals who had threatened Plaintiff, and despite

Plaintiff's requests to be placed in protective custody. Plaintiff claims Defendants have refused to take action to separate him from other inmates who have issued threats, denied his requests for protective custody, and have informed him he will be returned to the general population (at the time he filed the complaint, he was in protective custody "kickout" status). If he goes back into general population, Plaintiff will have no protection from the gang members who have threatened to injure or kill him.

The Court therefore concludes that Plaintiff is under imminent danger of serious physical injury so as to escape the "three-strikes" rule of Section 1915(g), and he may proceed IFP in this case.

It is hereby **ORDERED** that Plaintiff's motion for leave to proceed IFP in this case (Doc. 19) is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b), **IT IS ORDERED** that Plaintiff shall pay the **$350.00 filing fee** applicable to this civil action as follows:

1. Plaintiff shall pay an initial partial filing fee of **$50.25**. *See* 28 U.S.C. § 1915(b)(1). The agency having custody of Plaintiff is **DIRECTED** to transmit this amount from Plaintiff's prison trust fund account to the Clerk of Court upon receipt of this Memorandum and Order.

2. Plaintiff shall make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison trust fund account until the filing fee is paid in full.

3. The agency having custody of Plaintiff shall forward payments from Plaintiff's account to the Clerk of this Court each time the amount in the account exceeds $10 until the filing fee is paid. Payments shall be mailed to: Clerk of the Court, United States District Court for the Southern District of Illinois, P.O. Box 249, East St. Louis, Illinois 62202.

**Preliminary Review of the Complaint**

The Court is required to conduct a preliminary review of the complaint pursuant to 28

U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds that Plaintiff's claims should receive further review. However, Plaintiff's allegations against certain

Defendants are subject to dismissal for failure to state a claim.

**Factual Summary**

Plaintiff alleges that he has been targeted for a "hit" by members of the Vice Lords gang, and has suffered three separate physical attacks. Since May 2011 and continuing through October 2011, Plaintiff has made both written and verbal requests to be placed or kept in protective custody at Menard. Plaintiff also requested a transfer to another prison. Plaintiff directed these requests to Defendants Gatez (the Deputy Director of the Illinois Department of Corrections (IDOC)), Rednour (the Menard Warden), Hasmeyer (of Menard Internal Affairs), Sauerwine (Menard Mental Health Director and Chair of Protective Custody Unit), Lyerla (Cell House Major at Menard), Benton (of the IDOC Administrative Review Board), and Godinez (the IDOC Director). Although he has been temporarily placed in protective custody, his requests to remain there have been denied.

Most recently, on October 13, 2011, Plaintiff gave Defendant Campbell (a correctional officer) a note that stated Plaintiff was in danger of being assaulted by his cell-mate, a Vice Lord, and other inmates. Defendant Campbell responded, "[f]ight, I don't care," and failed to notify any other officials, or take steps to protect Plaintiff (Doc. 1, p. 5). Soon after, Plaintiff's cell-mate attacked Plaintiff. Similarly, Defendant Pharott ignored a report by Plaintiff that he was being threatened by his cell-mate, and subsequently did nothing to prevent the attack (Doc. 1, p. 7; Doc. 1-2, p. 18).

Additionally, Plaintiff alleges other Defendants have failed to intervene when Plaintiff called for help in the midst of an attack. According to Plaintiff, Defendants have acted in collusion to set him up for an attack from another inmate as a retaliation for Plaintiff's grievances

and or requests for protection. On May 12, 2011, Plaintiff alleges Defendant Livinston placed him in the shower with one arm handcuffed to the bars (Doc. 1-2, pp. 1, 5). Then another inmate, who was not cuffed, was brought into the shower with Plaintiff and the two were left alone. According to Plaintiff, he received a severe beating from the inmate. Finally, Plaintiff alleges he has been refused medical attention after suffering injuries from the attacks.

Plaintiff seeks injunctive relief so that he may remain in protective custody, as well as compensatory and punitive damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) numbered counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of the Court. The designation of these counts in no way constitutes an opinion as to each count's merit.

**Count 1 - Failure to Protect from Inmate Assaults**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove prison officials were aware of a specific, impending and substantial threat to his safety, often by

showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

A defendant in a failure to protect claim cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843 (a substantial risk of harm to a prisoner may exist where he "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"); *see also Hill v. Godinez,* 955 F. Supp. 945, 949 (N.D. Ill. 1997) (summary judgment denied for defendant who refused plaintiff's request for protective custody where plaintiff "apparently did everything except identify by name" the inmates who were threatening him, and plaintiff was then attacked by gang members). Under this authority, a plaintiff's inability to identify by name each inmate who threatened him does not make the threat insufficiently specific or credible.

When a plaintiff has been attacked by another inmate, if he is to succeed on a failure to protect claim, he must show the defendants knew there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners . . . . [T]he eighth amendment has a mental component. The eighth amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is "punishment" depends on the mental state of those who cause or fail to prevent it. . . . Other mental states, including total indifference to risks, come so close to deliberateness

> that courts treat them alike. Thus judges speak . . . of "deliberate indifference" or "recklessness" as the functional equivalent of intent. Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In the instant case, Plaintiff has been attacked by other inmates on three occasions. In each instance, the circumstances tend to indicate Plaintiff's attackers were carrying out threats made by the Vice Lords. The allegations against some of the Defendants are sufficient, at this stage of the process, to state a claim for failure to protect Plaintiff from a known, specific threat of assault after Plaintiff relayed the threat and requested protection. Moreover, Plaintiff has articulated an ongoing threat to his safety in the future.

In *Farmer,* the Supreme Court indicated injunctive relief would be an appropriate remedy for a prisoner who received a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat). Prior to *Farmer*, courts recognized a prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

"Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Old Republic Ins.*

*Co. v. Emp'rs Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998) (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987)) (additional citations omitted).

At this stage of the litigation, the Court is unable to accurately determine whether Plaintiff will be able to succeed on the merits or be able to meet the other criteria he must show to obtain the permanent injunction he seeks. Therefore, it would not be appropriate to dismiss his complaint at this stage. Plaintiff's failure to protect claims against Defendants Gatez, Rednour, Hasmeyer, Sauerwine, Lyerla, Benton, Campbell, Pharott, Godinez, and Livinston shall receive further review.

**Count 2 - Retaliation**

In addition to claiming Defendant Livinston failed to protect Plaintiff from assault in the shower on May 12, 2011, Plaintiff asserts Defendant Livinston purposely placed Plaintiff in that situation knowing he was likely to be attacked. Defendant Livinston, according to Plaintiff, acted in retaliation for Plaintiff's filing grievances and requests for protective custody (Doc. 1-2, p. 5).

Plaintiff also alleges after he was attacked on October 13, 2011, Defendant Pharott directed other officers to place Plaintiff in a protective custody cell (Doc. 1-2, p. 18-19). However, Plaintiff alleges he was denied access to medical assistance in retaliation for his earlier requests for protective custody (Doc. 1-2, p. 18-19).

In another incident of alleged retaliation, Plaintiff states in May 2011, he was purposely placed in a cell with inmate Byron Merriweather, a known Vice Lord, who attacked Plaintiff (Doc. 1-2, p. 3-4). Plaintiff called for help during the attack, but the officer on duty ignored

Plaintiff's calls. Plaintiff does not identify the officers who engaged in this alleged retaliation, nor does he state which named Defendants, if any, were involved.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* A complaint that provides a short, clear statement of the relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim. *Id.*

At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). This is a question that cannot be resolved at the pleading stages of this case. Thus, the Court is unable to dismiss Plaintiff's retaliation claim against Defendants Livinston and Pharott at this time.

**Count 3 - Deliberate Indifference to Medical Needs**

Plaintiff states after he was attacked by his cell-mate on October 13, 2011, he requested medical attention from Defendants Pharott (a correctional officer) and Mgee (a nurse), but was

denied. Plaintiff had been punched in the face, had his glasses broken, and he sustained a cut to the leg. Plaintiff suffers from epilepsy, and claims after the attack he had headaches, a seizure, and vomited blood. He also claims the injuries have caused his seizures to become more frequent. Defendant Pharott moved Plaintiff to another cell after the attack, but refused to obtain medical help for him (Doc. 1-2, p. 14, 18-19). When Plaintiff later communicated his need for assistance to Defendant Mgee, she also refused any aid and told Plaintiff there was nothing she could do for him (Doc. 1-1, p. 6).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be objective indicia of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the

unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Additionally, a condition so obvious even a lay person would easily recognize the need for a doctor's attention is considered a "serious" medical need. *Id.*

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.

In this case, Plaintiff was attacked and sustained obvious injuries. Accordingly, Plaintiff requested medical care. Plaintiff alleges Defendants Pharott and Mgee were aware of the risk of serious harm to Plaintiff, but failed to address his need for medical care. The sole medical provider named herein, Defendant Mgee, may have concluded Plaintiff's injuries did not require intervention. However, at this stage the Court cannot determine whether her actions amounted to deliberate indifference, constituted mere negligence, or were a reasonable exercise of medical judgment. Accordingly, Plaintiff's claims against Defendants Pharott and Mgee shall receive further review.

**Defendants Mayer and Teel**

According to Plaintiff, Defendant Mayer (a correctional officer) told the him he "should learn to fight" and any fights Plaintiff had with the Vice Lords would "probably never be documented" (Doc. 1, p. 7; Doc. 1-1, p. 5). Defendant Mayer also told Plaintiff "some things

you must solve on your own" (Doc. 1, p. 7; Doc. 1-1, p. 5). These comments were made while Plaintiff was seeking assistance from Mental Health staff, and he took Defendant Mayer's words to mean that he would not be given any protection from the threatened assaults. However, Plaintiff does not describe any circumstances where Defendant Mayer ignored a threat communicated by Plaintiff or failed to intervene in an attack. Moreover, Plaintiff does not indicate that Defendant Mayer had any authority to grant Plaintiff's requests for protective custody. Defendant Mayer's comments alone do not state a claim against him for which relief may be granted.

Defendant Teel is named in the caption of Plaintiff's complaint, but Plaintiff makes no allegations against this Defendant that might state a claim for relief. He notes in the caption that he/she is on the Mental Health staff, and states he wrote a letter to Defendant Teel *after* the October 14 assault, describing how the assaults are affecting him (Doc. 1-1, p. 4). He complains he was told it was all in his head and he was making it up. He requested assistance (he does not specify the exact nature of his request), but was "blown off." Once again, Plaintiff fails to indicate that Defendant Teel had any responsibility or involvement in not preventing the attacks on Plaintiff. Indeed, Plaintiff also fails to indicate Defendant Teel had any role in addressing Plaintiff's protective custody requests.

Simply because a prison employee knows (or should know) about a Plaintiff's problems does not impose a duty to fix those problems. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Plaintiff has alleged these Defendants had knowledge of his concerns about threats to his safety, but has not articulated that either was in a position to prevent past or future harm to him. Therefore, Defendants Mayer and Teel shall be **DISMISSED** from this action **without**

**prejudice**.

**Pending Motions**

    **A.  Motion for Appointment of Counsel**

Plaintiff's motion for appointment of counsel (Doc. 3) is also before the Court.  There is no constitutional or statutory right to appointment of counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the . . . plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself."  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  With regard to the first step of the inquiry, Plaintiff indicates that he has made some attempts to obtain counsel, but does not give enough information for the Court to assess whether such attempts have been "reasonable."  Nor does it appear that Plaintiff has been effectively precluded from obtaining counsel on his own.

Future developments may change the Court's mind on whether counsel should be appointed or not.  At this early stage and time, though, the Court concludes Plaintiff appears to be competent to litigate his case.  Plaintiff's motion for the appointment of counsel (Doc. 3) is **DENIED without prejudice**.

    **B.  Motion for Common Law Records**

Plaintiff's motion (Doc. 16) requests the Court to send him a copy of all pleadings, motions, and other documents filed in this case for his records.  The Court's usual charge for

photocopies is $0.50 per page.  Even where a litigant has been granted leave to proceed *in forma pauperis* in a case pursuant to 28 U.S.C. § 1915, fees for photocopies are not among the fees that are waivable pursuant to Section 1915.  *See Robinson v. Miscellaneous*, No. 09C0148, 2009 WL 1649697, at *4 (E.D. Wis. June 11, 2009); *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990) ("Although the petitioner was granted leave to proceed in the district court as a pauper, that status waives only 'prepayment of fees and costs and security . . . .'  28 U.S.C. § 1915(a).  It does not give the litigant a right to have documents copied and returned to him at government expense.").

As Plaintiff has not tendered to the Court the necessary fee for photocopies of the documents, his motion for copies (Doc. 16) is **DENIED without prejudice**.  However, copies will be provided upon receipt of the necessary fee.  Plaintiff's complaint and exhibits total 81 pages, thus the copy fee shall be $40.50 for those documents.  The only motions filed in the case were filed by Plaintiff, and those not disposed of in this order have been ruled upon previously.

### C. Motion to Block Dismissal of Case

Plaintiff's motion (Doc. 20) seeks to prevent this Court from granting a motion to dismiss, which Plaintiff anticipates the Defendants may file.  To date, no Defendant has filed such a motion.  Indeed, none of the Defendants have even been served with the complaint because, at the time Plaintiff filed this motion, the Court's preliminary review had not concluded.  Under Federal Rule of Civil Procedure 41, each party has the right to file motions to dismiss an action.  The Court will not bar a party from filing these motions simply because the opposing party feels the dismissal is unwarranted.  Accordingly, Plaintiff's motion (Doc. 20) is **DENIED with prejudice**.

**Disposition**

  **IT IS HEREBY ORDERED** that Defendants **MAYER** and **TEEL** are **DISMISSED** from this action **without prejudice**.

  The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and to the Trust Fund Officer at the Menard Correctional Center *upon entry of this Order*. Additionally, the Clerk is **DIRECTED** to forward to Petitioner a copy of the docket sheet for this case to assist him in any future request for copies of documents.

  **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **GATEZ, REDNOUR, HASMEYER, SAUERWINE, LYERLA, BENTON, CAMPBELL, PHAROTT, MGEE, GODINEZ,** and **LIVINSTON** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

  **IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting

service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Donald Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)."

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** February 6, 2012

                                        s/ G. Patrick Murphy
                                        G. PATRICK MURPHY
                                        United States District Judge